Parker C. J.
delivered the opinion of the Court. This action proceeds on the ground, that the defendants fraudulently agreed together to institute and prosecute to a judgment a suit against the debtors of the plaintiffs and cause their property to be attached and finally sold on execution, to the exclusion of an attachment made on the same goods by the plaintiffs to secure their debt, which attachment was superseded and supplanted by the proceedings of the defendants.
The complaint is, that the attachment made by Paige to secure the note given to him was fraudulent, there being nothing due to him, — no consideration for the note, it being fabricated by Grant and Paige for the sole purpose of delaying and defeating such creditors as might intend to attach the property, in order to compel all but those who had previously attached, to take a pro raid share of the proceeds, and discharge Grant from their demands. This undoubtedly was the intent and purpose for which the note for 1500 dollars was made; whether it would have been effectual if the plaintiffs had pursued the right course to try its validity, it is not necessary to say. We have only to decide whether it was fraudulent, so as to charge the defendants in this action of tort, founded on an alleged conspiracy to do an unlawful act.
It is clear that but for this attachment the plaintiffs’ debt would have been secured ; the debt of Shaw, on which the first *557 attai hment was made, would alone have stood in the way ; for the debts of Paige & Co. and Read & Co., being against Grant alone, must have given place to that of the plaintiffs against the firm, the funds raised by the sale of the goods being copartnership funds.
The effect of this arrangement, therefore, was to pay out of the joint fund the whole demands of Paige & Co. and Read & Co. against Grant, and to oblige the creditors of the firm to accept only a dividend of the residue. This was an unlawful agreement, and directly in violation of the rights of the copartnership creditors. The plaintiffs however might have resisted this, had they taken the proper measures for that purpose ; they might, under a late statute, have defended the action brought by Paige on the note for 1500 dollars. Showing, as might have been done, that this note was given at the suggestion of Shaw, without the knowledge or consent of any of the copartnership creditors for whose use it was made, that no debt was discharged by it, and no express assent of those creditors proved, the note would have been declared void, the action would have failed, and the attachment upon it removed out of the plaintiffs’ way. The plaintiffs might also have obtained precedence of the attachments for the private debts of Grant alone, by giving notice to the officer who held the proceeds, of the priority of their claim upon the copartnership funds.
Having neglected this remedy, have they a right to seek relief in this action ?
By the scheme adopted, their attachment, otherwise good, has failed. They have been intercepted by a surreptitious iudgment, and the funds have been placed in the hands of Paige, who has no right to hold them. The form given to the demand, and the action, were calculated to deceive the plaintiffs, and they may have found it difficult, or perhaps have been unable, to prove the facts on trial, so as to defeat the action. There was an actual wrong done, and a certain injurious consequence. It was an attempt to lock up the effects from attachment, and to compel creditors to a compromise, after misapplying a considerable portion of the funds to the payment of Paige’s own debt and that of Read &Co., diverting them from *558 their legal course, which was to pay partnership debts ; foi part of the agreement was, that the proceeds should be so mar-shaded. Now, although it were lawful for Grant, on expectation of failure, to prefer one class of creditors to another, it was not lawful for him, otherwise than by actual payment, to appropriate the partnership funds by assignment, without the knowledge and consent of his partner, to pay his private debts. Nor was the transaction actually adopted an effectual assignment, for the creditors were not parties to it, nor were they bound by any act to release their demands in consequence. It seems to have been an attempt to make an assignment with preferences to the creditors of Grant, against the will of Carr.
We consider the remedy provided by the statute, to be founded upon supposed collusion between the parties to the record, to obtain and suffer judgment for the purpose of making an unlawful disposition of the property of the debtor to the prejudice of creditors. This is a mode of concealing the debt- or’s effects, so that they may be drawn from the reach of creditors who might wish to avail themselves of their legal right to attach or levy. It is certainly true, that a failing debtor may dispose of his effects in payment or security of certain of his creditors in preference to others. This is justifiable under our law, and under the English law in cases where the statutes of bankruptcy do not apply, as appears by the very strong cases here cited. Holbird v. Anderson, 5 T. R. 235 ; Estwick v. Caillaud, ibid. 424 ; Pickstock v. Lyster, 3 Maule & Selw. 37 ; Tolput v. Wells, 1 Maule & Selw. 408. But it is not true, that after a lien has been created by attachment, the debtor can, with the aid of another creditor or any person not a creditor, lawfully make any arrangement with the aid of legal proceedings, to intercept or defeat such lien. The attachment of the plaintiffs, being on the partnership effects, created a lien in their favor subject only to prior attachment by partnership creditors. The effect and purpose of the suit upon the note for 1500 dollars, given without consideration, and in the partnership name without the knowledge of one of the partners, were to defeat all other attachments than those which the parties who suggested and aided in this transaction had caused to be made : and although this large attachment preceded in point of *559 time the attachment of the plaintiffs, yet the prosecution of the scheme, entering the action, suffering judgment and levying execution, were all unlawful acts, tending to the wrong and injury of the plaintiffs and to the defeating of their attachment, which but for this contrivance would have been available. The effect, as well as the object of the whole, was to defeat the plaintiffs’ attachment, and compel them and other creditors to come into a compromise or lose the whole of their debts. If such a course can be sanctioned, a' new mode of voluntary bankruptcy will be established more mischievous than those which already exist.
Now we think that such proceedings lay the foundation for an action at common law against the parties to a judicial process thus abused. There is an unlawful act and a direct injury.[1] This remedy at common law is not taken away by the statute which provides another, either ■ expressly or by implication. The new remedy is merely cumulative. Nor is it a defence, that the defendants’ execution might have been superseded by notice to the officer and a demand upon him to levy the plaintiffs’ execution in preference. The officer might refuse, not knowing which had the legal preference, and although an action might lie against him, upon such refusal, yet that does not purge the wrong of the defendants, and it is better that they who caused the wrong should be held answerable, than that the officer, who may be innocently though officially liable, should be made to suffer.
It is not necessary, to maintain an action of the case, that there should be any moral turpitude in the act complained of. It lies whenever a damage is occasioned by a wrong done. It is founded upon the mere justice and conscience of the case, and is in the nature of a bill in equity. Bird v. Randall, 3 Burr. 1353. “ The action of trespass on the case is a universal remedy given for all personal wrongs and injuries without force ; so called because the plaintiff’s whole case or cause of complaint is set forth at length in the original writ.” 3 Bl. Comm. 122. {< Where any special consequential damage *560 arises, which could not be foreseen and provided for in the o'rdinary course of justice, the party injured is allowed to bring a special action on his own case by a writ formed according to the peculiar circumstances of his own particular grievance. For wherever the common law gives a right or prohibits an injury, it also gives a remedy by action; and therefore, wherever a new injury is done, a new method of remedy must be pursued.” 3 Bl. Com. 123 ; Millar v. Taylor, 4 Burr. 2345 ; Webb's Case, 8 Co. 96.
This, to be sure, is familiar law ; but it was objected that this action would not lie, without proving a real fraudulent intent partaking of moral turpitude, and this principally because of the strong terms made use of in the declaration. We see no necessity of proving, nor do we impute to the defendants, any wicked or corrupt design to cheat or defraud the plaintiffs.[1] It is enough that they associated together and aided each other to do an unlawful act prejudicial to the plaintiffs, so that in regard to the law of debtor and creditor it is fraudulent. The expletives in the declaration may all be struck uut, and yet the action remain, for the facts stated and proved sustain it.
In regard to the objection, that the plaintiffs’ debt was not due, or rather not payable, when his action against Carr & Grant was commenced, we think it immaterial in ‘this action. That was an affair between the plaintiffs and defendants in that action ; or if the judgment was obtained by collusion between them to the prejudice of subsequent attachments, the law is open to those who have suffered. The defendants in this action were not injured by it.

Judgment for the plaintiffs.

 See Livermore v. Herschell, 3 Pick. (2nd ed.) 38, note 3, and cases cited.

See Livermore v. Herschell, 3 Pick. (2nd ed.) 38, note 3; Allen v. Addington, 7 Wendell, 9 ; Moore v. Tracy, 7 Wendell, 229 ; Addington v. Allen, 11 Wendell, 374; Lamb v. Stone, 11 Pick. 535.